Good afternoon, counsel, and may it please the court. Wayne Lozier, a licensed bounty hunter from Louisiana, appeared in Missouri to apprehend a fugitive from Louisiana. In doing so, he, according to the government, violated Missouri state statutes regarding bail recovery. Because of that, the government charged Mr. Lozier with kidnapping. The most contested issue at trial was whether Mr. Lozier's actions were unlawful as defined by the court. The court, sua sponte, crafted its own jury instruction, stripping the jury of the ability to consider whether Mr. Lozier's actions were both contrary to law and without justification or excuse. In doing so, it violated his Fifth Amendment right to due process. So we're asking that this court vacate Mr. Lozier's conviction and remand it for new trial because this court imposed a conclusive presumption of violation of the Fifth Amendment. Mr. Morgan, I'm kind of curious. Where does the justifiable or excusable language come from? Your Honor, the- And I know neither party seems to dispute that that's applicable, and I can ask the government about that later. But I'm just wondering, I didn't see that in the pattern instructions or anything like that. What's the source of that? Yes, Your Honor. I think the source is honestly the unique nature of this case. There is, throughout our briefs, the history of bail recovery in this country, the history of the Federal Kidnapping Act, and we believe that the definition based on the history and the legislative purpose of the Federal Kidnapping Act require more than some technical misstep. This court previously, United States v. Hoog, acknowledged that the definition of lawful is contrary to law as being circular and no definition at all. And so we believe that that court, the court in Hoog required, and the Supreme Court in the United States v. Chatwin, or Chatwin v. United States, required more than just some technical misstep or some legal footfall. And so because of that, the parties mutually presented the jury instructions to the court that the court submitted to the jury requiring that unlawful mean both contrary to law and without justification or excuse. So at the outset, what I will say, Your Honor, is that we're not suggesting that justification or excuse was some affirmative defense that was defined in the statute or in jury instructions or case law, but it was something that the judge agreed to and submitted to the jury, thereby requiring that the jury make their own independent determination of what justification or excuse meant. So it was never discussed whether it was a legal justification or excuse or a factual justification or excuse. There was no discussion of that among the parties with the district court before the instruction was given or even to the jury? Not, no, Your Honor. The short answer is no. But I do believe that we agree that it's not a legal justification or excuse, but instead a factual one. It's something that the jury should have been able to consider, but was unable to based on the presumption that the court provided to the jury in jury instruction number 16. Counsel, does Mr. Lozier dispute the sufficiency of the evidence for the conviction or would we have to find, if we found error in instruction 16, we would have to find that it was not harmless? Your Honor, I do believe that there is a requirement that if the court were to find harmlessness, it must be beyond a reasonable doubt. We would not concede the sufficiency of the evidence here because, again, the issue is that the jury was only able to consider half of the definition of the element unlawfully that the court provided to the jury at that time. And so the issue here is that notwithstanding whether the evidence was sufficient or not, that the jury was unable to consider the other half of the jury instruction that the court provided to them, which was neither justifiable nor excusable. The presumption channeled their finding to require only that if they agreed that he had acted contrary to law, that his actions were unlawful. And that is the primary issue here, Your Honor. And so at the outset, Your Honor, I would note that the standard of review here has been one that has been contested, but the only case to squarely address the standard of review in the context of unconstitutional presumptions is the Ninth Circuit in the United States, where there is a 12-0 review. However, if this court were to apply an abuse of discretion standard, a court necessarily abuses its discretion when it makes an error of law. And so we believe that no matter which standard of review that this court uses, the outcome remains the same. And so the issue is important because the role of the jury is defined in the Constitution. So how would the jury consider this justification and excuse? And maybe I'm looping back into my question of legal justification versus factual. But I'm curious. I understand that you or the trial counsel didn't raise this in the closing because of the way it was instructed. But what do you think would be sufficient to be a justification or excuse here, and how would the jury assess that? Yes, Your Honor, and I think while my initial answer is circular, it was ultimately up to them to determine what they believed to be justified or excusable. But throughout the trial, evidence was elicited regarding requirements with respect to bail bonds, the fugitive's knowledge of her requirements to appear in court, and the consequences of a failure of those requirements, how bail bonds work generally, and that if you fail to appear in court, a warrant can be issued and you can be arrested for that. So your position is this is a different kind of justification and excuse that is entirely fact-based, which is just send it to the jury. They can figure out what those words mean as compared to a legal justification or excuse, which would have perhaps elements or sort of instructions to the jury about what and what does not qualify as a legal matter? I would agree with that, Judge Kelly, because the judge instructed them that unlawful meant without justification, or contrary to law, without justification or excuse. And he did not put any guardrails on what that meant. And so at that point, it became the jury's job to determine, based on the evidence, whether or not his actions were, even if contrary to law, justified or excusable. And the fact that they weren't able to do that because of the conclusive presumption is the primary issue here, Your Honor. As I understand your argument, it is that Instruction 15 does include your language you want justified or excusable, but 16 does not. And therefore, you're arguing that 16 imposes a mandatory conclusive presumption on the jury. Is that right? That is correct, Your Honor. Jury Instruction 15 does include the definition of unlawfully as contrary to law and without justification or excuse. Okay, so two things come to mind. Going down the road of could this potentially be harmless, were you able to argue, given that you had at least one instruction that brought this up, that these facts make this justifiable or excusable to the jury? And whether or not you did, what would you pose that you would argue now that would make it justifiable? Because obviously, ignorance of the state law isn't going to get you anywhere. So what else is there? Yes, Your Honor. If I understand your question correctly, I do believe that throughout trial evidence was elicited that even if his actions were contrary to Missouri state law, he was nonetheless justified or excused in his actions based, again, on the knowledge of the victim fugitive regarding bail laws and that she was aware that a warrant had existed. Additionally, Your Honor, evidence was elicited throughout trial that at least one law enforcement officer that Mr. Lozier had encountered after having provided him with the warrant for Ms. Howard, after providing him his credentials as a Louisiana bounty hunter and advising him who he was, where he was from, and what they were there for, Sergeant Allen with the Sutherland Police Department allowed Mr. Lozier to depart with the fugitive. So we do believe that there was ample evidence in this case that we would have been able to point to in closing to support the fact that even if he made a technical misstep by violating Missouri bail laws, he was nonetheless justified and excused, again, based on the unique relationship between Mr. Lozier and Ms. Carman, and I believe I misstated her name previously, Ms. Carman, to, again, justify or excuse his conduct based on any finding that the jury could have made. I'm curious, at the time the bond is executed and posted by the bondsman, I assume, is there any sort of an agreement that's signed? Generally speaking, Your Honor. And did that hit the record, and does the bonded person consent to being arrested in the case they blow the bond, so to speak? Generally speaking, Your Honor, and the one thing that I will concede is in this case there was not a signed document or agreement entered into evidence. That is why we elicited testimony from her regarding her previous experiences to explain to the jury that she had prior knowledge of the requirements and rules regarding being bailed out of jail. The evidence presented was that she had been charged with multiple misdemeanors previously, including a felony, and had a history of being arrested in jail and having to be bailed out. She acknowledged that she generally understood the rights the bail bondsmen have when it comes to bonding people out, the agreement that is made, and the fact that if warrants are issued because of a failure to appear in court, that she can be arrested for that. And so while we would concede in this case that she was bonded out, I believe, by her husband and didn't personally sign any documents, she nonetheless understood that she was released as a result of this agreement. And by being released and consenting to be released, she was also consenting to the fact that if she were to fail to appear in court as required, that she could be arrested. When you say arrested, do you also mean picked up by the bail bonds agents? That is correct. And again, that goes into the deeply rooted common law regarding fugitive recovery and bail bonds. That is cited throughout the brief, and so I don't want to waste time here to discuss it, but there is a significant history regarding bail bonds. I think every circuit in every state to some degree has stated that bail bondsmen and fugitive recovery agents enjoy these common law rights because it is a contract between the bailee and the bailer. And this was a situation where she, although she didn't sign any paperwork, had the knowledge that if she was agreeing to be released, that if she failed to appear in court, she could be subject to a warrant, and that warrant could result in her being arrested, whether that be by law enforcement or by a fugitive recovery agent at the request of the bail bondsman that released her. And so, again, the primary issue here is that from end to end, the element that had been contested was whether or not Mr. Lozier acted unlawfully as defined by the district court. And so the district court imposed this conclusive presumption on the case's most contested element. Additionally, it provided two separate interrogatories that required the jury to answer yes or no, and if they had answered yes to either one of them, then the presumption was that he had acted unlawfully. The interrogatories are generally disfavored in criminal cases. This circuit has acknowledged that, and it has the impact of channeling the jury's decision-making by effectively mirroring the government's theory of guilt. And the theory of guilt, again, was that Mr. Lozier had violated these two separate Missouri statutes. The question, the interrogatories that resulted in the presumption were directly pulled from those statutes in lieu of the request that the parties jointly made that he present the entire bail statute to give the jury the ability to look at it and see what bail bondsman's rights exist, what fugitive recovery agent's rights exist in the context of a person who has been out on bail who fails to comply with their agreement. But the court, instead of providing that jury instruction to the jury, instead created his own jury instruction that effectively condensed those statutes in the two interrogatories followed by that presumption. And if there are no further questions, Your Honor, I will reserve the remainder of my time for rebuttal. Very well. Thank you. Mr. Mark. May it please the Court. To start off by answering the question that you posed at the beginning of this argument, Judge Grunder, the source for this justifiable and excusable language came from the model jury instruction on the kidnapping offense. If you look at the committee's note, the first note from the committee note, under that verdict director, it states that if requested, the term unlawfully should be explained to the jury. This kidnapping offense... I did find that. I didn't find anything that led me to, you know, and there's all kinds of see this note and that note, and I tried to follow that, but I never found anything that led me to the excusable or justifiable language. So the note references or cross-references the federal statutes on homicide or murder. Several of those statutes, or excuse me, jury instructions, include the affirmative defenses of justification or excuse in prosecutions for homicides. That's where the language came from. Okay. Well, let me maybe cut through it a little bit. Does the government assume the government agreed with that at the time and continues to agree that that's the appropriate instruction? Yes. Our concern at the time was... Then why don't you have a problem when that falls out of what appears to be then, if you violated any one of these two provisions of state law, it's not justified or, you know, it's in violation of law, completely neglecting the unjustifiable or excusable language? Right, because instruction number 16 was directly related to Missouri law, Missouri law on bondsmen and surety recovery agents, while instruction number 15 was tied or directed solely to a federal kidnapping, which was the offense at issue in the prosecution. So those two jury instructions can be read together, and the jury was able to read them together, and this court has indicated that it presumes that... Well, how could they read them together? I mean, 16 says if you violated either this state law or that state law, then it's an illegal act. And that writes out the justifiable or excusable language. The fact remains that the justifiable and excusable language remained in the instruction. In fact, it was referenced or pointed to by defense in closing argument. If you look at volume three of the trial transcript on page 48, defense counsel did reference that instruction, and specifically the justification and excuse language and the definition of unlawfully under the federal kidnapping statute. But in the closing, didn't you do the opposite and say, if you checked a box on 16, you're done with the analysis of unlawfully, which is really the point of the questioning here? And that was the only real conclusion that was supported by the evidence. And so, of course, that was the argument that the government made at the time. I think it's also important to note that these defenses, justification and excuse, they're affirmative defenses. And they're typically and commonly defenses in law where a defendant admits to the elements of the offense, the elements of the crime, and says but. Well, wait a minute. Wait, wait, wait, wait, wait. How does that get to be an affirmative defense? Doesn't it fall out of unlawfully, which is an element you must prove? Correct. In offering that definition in instruction number 15, frankly, the government took on more than it needed to in terms of burden of proof. But the fact remains that it still had to prove, as the instruction indicated, that unlawfully means both contrary to law and neither justified or excusable. Did you argue to the jury this is not justifiable or excusable in closing argument? No. That argument was not made by the government in closing argument. Counsel, as I read the Supreme Court's decision in Francis v. Franklin, instruction 15 can't cure 16 because it merely contradicts constitutionally infirm instruction. It doesn't explain it. There is some inconsistency between the two instructions. There's no question about that. But, again, as instruction 16 starts, under Missouri law, and it was clear to the jury throughout the evidence in the case that the provisions that instruction number 16 was speaking to were provisions of Missouri law. The representative from the Missouri Department of Commerce and Insurance testified about those provisions. The officer from St. Peter's who investigated the case testified about those provisions. And, frankly, the defense never argued or challenged the fact that those accurately stated the provisions under Missouri law that regulated the conduct of surety and recovery agents. That's what smells funny to me about this case, is we're essentially taking Missouri state law and federalizing it. Let me ask you this. In the absence of these Missouri state laws, would you have been able to bring a kidnapping case? There was no other evidence that the defendant acted contrary to law without pointing to it. There's almost implied consent, isn't there, when you bond out with a bondsman? There's implied consent that if you blow the bond, you may get arrested and hauled back. The evidence in this case was that the victim never signed a bond agreement. And, in fact, the documents that the bondsman had. I think there was at least some evidence that she understood that that's the way it worked. Not in this situation. And the defense can't point to the fact that she has a criminal history to somehow say that she, in this case, entered into a contractual agreement with the bondsman when she never signed an agreement to that effect. I guess I just don't understand why this isn't a state law violation. Well, it's a federal kidnapping because there's no question that the victim was seized and detained and transported across state lines against her will. And it was done so unlawfully because the individual, the defendant, who did so, didn't follow the laws that regulated that conduct. State law. Correct, in the context of a bounty hunter or a fugitive apprehension. I don't know where this leads, counsel, but it is troubling that when you federalize state fugitive recovery law like this, you could end up with some pretty interesting situations. Let's suppose that instead of not being licensed in Missouri, he was licensed in Missouri, but it had lapsed by one day. That's the difference between being a federal felon and a legal bondsman. And that's how the Missouri State Legislature has enacted a criminal statute to regulate that industry. But did the United States Congress do that? No, the United States Congress enacted it. I mean, it may be a great state case, but it just seems odd. It is, you know, the kidnapping statute is unique in that one of the elements of the offense is that the defendant acted unlawfully. And this court has, on more than one occasion, indicated that that term can be broadened or further explained by supplemental instructions. And that's really what the district court was trying to do with instruction number 16. Because if the term unlawfully is just hanging out there for the jury, without further explanation, then the jury is moving from the finder of fact to a role that is only within the district court's power, and that is to interpret the law. Are there any comparable cases that we could look at where a state law is incorporated to make it unlawful? Yes. In any context, it would be helpful. I believe some examples would be a RICO violation, where there's state predicate offenses, or a Vicar prosecution where the offenses that are used or pled are state-level offenses, offenses that wouldn't be unlawful under federal law. And so while it is unique, it does happen in other contexts in federal statutes. In those other statutes, does Congress specifically identify the types of crimes, or do those get lumped in just generally under unlawful, so to speak? Those get lumped in, and in fact, in those cases, district courts supply the jury with the underlying law from the states in which they apply. And that's what the district court did in this case. And there's really no dispute that he did so accurately. And that's what the district court is supposed to do. The district court is supposed to instruct the jury on the law that's accurate and applicable given the facts of the case. And given the facts of this case, that it's a kidnapping in which the defendant was acting as a surety recovery agent, the applicable law that was accurately provided to the jurors in this case came from Missouri State law. And again, in United States v. Ford, a case from this circuit, that dealt with the unlawful element of the kidnapping, this court said that when supplemental instruction is given to further provide content or context to that element of the offense, juries are presumed to be able to follow and understand the court's instructions. And I think the jury understood the court's instruction here. Now, in a perfect world, yes. Instruction number 16 would have concluded with something that, under Missouri law, the defendant acted unlawfully or the defendant acted contrary to Missouri law. But just because those two. The court would have said, but if you otherwise find it unjustifiable or excusable, then you may find something else, right? I respectfully disagree with that because I think that that would have then taken instruction number 16, which was an accurate statement of Missouri law, and made it inaccurate by writing in those defenses that aren't contained within the statute. The agreed existed in instruction 15. Correct. Under a federal kidnapping prosecution, the defenses of justification and excuse are available. The fact that there was no evidence to support them in this case speaks to the harmless error review that this court should exercise if it finds that there was instructional error by the district court. And there's no question. There can't be really any dispute at the Supreme Court's decision, and neither that harmless error review applies to conclusive presumptions, to instructions that direct a jury with respect to one or more elements. Is it harmless beyond a reasonable doubt or just harmless? The test that was articulated by this court in the Dvorak decision in 2010 is, is it clear beyond a reasonable doubt that a rational jury would have found defendant guilty absent the error? So applying that here, had the defense been able to argue justification and excuse, which the government doesn't concede that they weren't able to do so because they referenced it in the closing, but had they been able to argue that? There is no basis in fact to support those defenses, and there certainly isn't any basis as the jury was instructed. I asked that question of Mr. Morgan. What would he have argued? I know he mentioned a couple of things, one of which is that another officer, I think a Sullivan officer allowed him to go forward after knowing it. What's your response to what he said? Yeah, and the jury heard that evidence. And they were able to take that evidence with the remaining evidence in the case and decide whether or not the defendant acted unlawful. Was he able to argue that because the, whatever, he mentioned a couple of things, but one of which was the officer who let him go. Did he argue that that made it justifiable or excusable? Not using those explicit terms, but the whole defense was, hey, look, I was here doing a job, and I thought I was doing the right thing because this is how I've done it before. And, in fact, when another police officer told me that I was free to go, that further embedded in my mind that I was acting lawfully. So that's a flavor of an excuse defense, or I was justified because I was instructed by another police officer that I was acting lawfully. Without the proper jury instruction, does the harmless error analysis become somewhat circular in that if the jury doesn't know that unlawful also means not justifiable or excusable, no matter how much evidence there is that he violated Missouri law, does it become circular in terms of the sufficiency of the evidence? It doesn't become circular because the court looks at the record, the evidence that was submitted to the jury, and decides is there evidence that would have led to a different conclusion had that defense been available to the defendant? And the answer is clearly, in this case, no. You know, the harmless error doctrine is primarily concerned with whether or not the factual question of a defendant's guilt or innocence is decided fairly. In this case, that question, even if there was instructional error, was decided fairly. The facts, both that were in favor of the defendant's conduct and those that were against his conduct, were submitted to the jury, and they ultimately concluded that he, in fact, acted unlawfully in seizing, detaining, and carrying away the victim in so much as he committed a kidnapping. Whether it be because the instructions were appropriate or whether or not, under a harmless error review, no rational jury could have found otherwise, the government respectfully requests this court affirm the jury's verdicts finding the defendant guilty of both counts in this case. Thank you. Thank you, Mr. Martin. Rebuttal, Mr. Morgan. Yes, Your Honor. So, Judge Graz, I do believe that you hit on the Francis case that dealt with contradictory language between jury instructions. I would agree with you in that regard because Francis stated that language that merely contradicts will not suffice to absolve the infirmity when it comes to jury instructions because a reviewing court can't know which jury instruction that the jury ultimately decided to follow. And I think that goes into the harmless error review because Sullivan, Louisiana, stated that harmless error analysis focuses on the basis on which the jury actually rested its verdict. And unfortunately, we have no way to know which jury instruction that the jury ultimately decided to follow in this case because they were conflicting. Judge Kelly, I think you noted that, or you asked Mr. Martin if he had argued against justification or excuse in his closing and he conceded that he didn't. I would say that that speaks to their belief that the presumption that the court imposed in the jury instruction relieved them of their burden of proof when it came to that instruction, or with that element, even though it was only effectively half of the element because it only addressed contrary to law and not justification or excuse. I would note one more thing that there were several objections that were made in this case when it came to the jury instruction, even when the final jury instruction that the court ultimately submitted came down. The continuing objection that I made was that it was an inaccurate statement of law because Missouri law, in the plain language, does not require that a fugitive recovery agent possess a valid Missouri license. It just requires a valid license, period. And so we objected on that basis. And Mr. Martin, just to briefly conclude, Mr. Martin referenced multiple other contexts in which they would use state law to charge federal cases. And he acknowledged that the judge supplies the loss of the jury in that case. That is what we asked him to do here, and he did not do that. He instead created his own jury instructions that channeled effectively the jury's decision-making towards the government based on their theory of prosecution. And so for all of these reasons, Your Honors, we would ask that you again vacate the conviction and remand for new trial. One question. Mr. Morgan, did you specifically object to Instruction 16 not noting the justifiable or excusable language? No, Your Honor, we did not. Are we here on plain error then? No, Your Honor, because we properly preserved the issue. The federal rules only require that we provide an alternative instruction and object with the bases on which we wish to, or on the reasons that we believe that the instruction is improper. We did that, and so the issue is properly preserved. Just so I'm clear, you provided an alternative instruction to Instruction 16 that included the justifiable and excusable language? No, Your Honor. The alternative instruction that the parties jointly submitted was the Missouri bail statutes as a whole. In that case, it would not have been a conflicting jury instruction between 15 and 16 because 15 defined unlawful as contrary to law and without justification or excuse. And then 16 would have simply said this is how bail law operates, and from there it would have been on the jury to decide whether his actions were unlawful as defined by the district court.  Let me ask it this way. What would have put the district court judge on notice that justifiable or excusable was missing from 16? The fact that it wasn't in there. I think it speaks to itself based on the fact that it only addressed one half of the instruction that he previously gave in Instruction 15. And again, Your Honor, for those reasons, we'd ask that you vacate the conviction and remand for a new trial. Thank you. Thank you, Counsel. We appreciate your, number one, accommodating us in your arguments today. The case is submitted, and we'll issue an opinion in due course.